**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-20211-DAMIAN/Elfenbein

**JESUS ALBERTO**
**RODRIGUEZ GUERRERO**,

Plaintiff,

v.

**DIEGO HERRERA**,

Defendant.
_______________________________/

# ORDER ON MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Defendant Diego Herrera's ("Defendant") Motion for Sanctions (the "Motion"). *See* ECF No. [60]. Plaintiff Jesus Alberto Rodriguez Guerrero ("Plaintiff") filed a Response in Opposition to the Motion (the "Response"). *See* ECF No. [63]. Defendant thereafter filed a Reply in Support of the Motion (the "Reply"). *See* ECF No. [64]. The Honorable Melissa Damian, United States District Judge, referred the Motion to the undersigned "to take all necessary and proper action as required by law." ECF No. [61]. The Court has carefully reviewed the Motion, the Response, the Reply, the record, and the applicable law. For the reasons explained below, the Motion, **ECF No. [60]**, is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

### A. The Nature of the Action

This admiralty action concerns the ownership and possession of a 2011 Sessa Marina Model C44 vessel (the "Vessel"). *See* ECF No. [1] at 1. Plaintiff alleges that he owns the Vessel, that the Vessel was unlawfully removed from his custody in Antigua, and that Defendant later

obtained an invalid Florida title and wrongfully retained possession of the Vessel. *See id.* ¶¶17–32. Defendant disputes Plaintiff's account and claims lawful title to the Vessel. *See* ECF No. [37] at 2–5. The Vessel's purchase, ownership history, custody, condition, value, and the circumstances under which it traveled from Europe to Antigua and later came into Defendant's possession are therefore central to the Parties' claims and defenses. *See* ECF No. [1] at 1–5; ECF No. [37] at 2–8.

Plaintiff initiated this action against Defendant on January 14, 2025. *See* ECF No. [1]. On August 26, 2025, the District Court entered a Scheduling Order setting April 30, 2026 as the deadline to complete fact discovery. *See* ECF No. [26] at 2. The Scheduling Order instructs the Parties that discovery disputes were referred to the undersigned, requires counsel to confer and engage in reasonable compromise before seeking Court intervention, and warns that the Court may impose sanctions if a party improperly sought or withheld discoverable material in bad faith. *See id.* at 3. On September 8, 2025, the undersigned entered an Order Setting Discovery Procedures. *See* ECF No. [27]. Among other things, that Order requires parties to raise discovery disputes within the period prescribed by Local Rule 26.1(g)(2), treats that 28-day period as the time for both good-faith conferral and seeking relief, and strictly enforces the requirement that discovery — including the resolution of discovery disputes — be completed before the discovery cutoff. *See id.* at 2. The Order also warns that the Court may impose monetary or other sanctions if discovery is withheld in bad faith or without substantial justification. *See id.* at 5.

**B. Defendant's Requests for Production**

On February 11, 2026, Defendant served 38 Requests for Production ("RFPs") on Plaintiff. *See* ECF No. [60-2]. The RFPs sought, among other things, documents concerning Plaintiff's alleged purchase and ownership of the Vessel, payments made to acquire it, the Vessel's custody

and safekeeping in Antigua, the alleged theft or unauthorized transfer of the Vessel, its repairs and maintenance, its value, and Plaintiff's claimed damages. *See id.* at 2–10. Plaintiff served written responses and an initial production on March 13, 2026. *See* ECF No. [60-4] at 2–13. At a March 12, 2026 discovery status conference, Plaintiff represented that he expected to serve those responses and responsive documents the next day but anticipated receiving additional documents from the United Kingdom and would produce them upon receipt. *See* ECF No. [33].

According to Defendant — and Plaintiff does not meaningfully dispute this chronology — Defendant's counsel raised perceived deficiencies in Plaintiff's RFP responses on March 23 and March 25, 2026, and again on April 8 and April 13, 2026. *See* ECF No. [60] at 2–3; ECF No. [63] at 2–7. Plaintiff made a supplemental production on April 3, 2026. *See* ECF No. [60] at 2. On April 22, 2026, Plaintiff's counsel represented that Plaintiff had no further responsive documents to produce. *See id.* at 3. Yet, on the morning of Plaintiff's April 27, 2026 deposition — three days before discovery closed — Plaintiff uploaded additional documents to the production folder. *See id.*

During the deposition, Plaintiff testified about additional documents responsive to Defendant's RFPs that he had not produced. *See* ECF No. [60-3]. When asked about documents relating to the transport of the Vessel to Antigua and maintenance invoices, Plaintiff testified that he "might be able to get more documents" and would obtain them if needed to prove his case. *Id.* at 7:3–9, 7:16–25. When defense counsel asked why those documents had not been produced, Plaintiff stated that he had produced the documents he believed supported his ownership and had "a couple more up [his] sleeve in case we make it to trial." *Id.* at 8:8–24. Elsewhere, Plaintiff explained that "in Spain, you do not show all of your cards up front" and "[y]ou save some things for the Court." *Id.* at 17:3–9.

Plaintiff's testimony also identified several additional categories of responsive materials. *See* ECF No. [60-3]. He testified that he possessed "[a]ll of the invoices" and documentation associated with the Vessel's purchase, although Defendant contends that Plaintiff produced only registry records rather than the underlying purchase and payment records requested in RFP Nos. 2 and 3. *Id*. at 17:18–21; ECF No. [60-4] at 4–6. Plaintiff referred to maintenance invoices for the Vessel's motors, but those invoices had not been produced in response to RFP Nos. 8 and 16. *See* ECF No. [60-3] at 7:23–25; ECF No. [60-4] at 4–7. And Plaintiff testified that documents could supply the surname of "Captain Pablo," the person to whom Plaintiff says he entrusted the Vessel in Antigua, although Plaintiff's response to RFP No. 15 did not identify that individual or produce those materials. *See* ECF No. [60-3] at 21:23–22:1; ECF No. [60-4] at 7.

In his Response, Plaintiff does not state that these documents were later produced. *See* ECF No. [63] at 4–7. Instead, Plaintiff argues that some of the testimony concerned documents Plaintiff might be able to obtain rather than documents then in his possession, that Defendant has quoted selectively from a lengthy deposition, and that Defendant knew of the alleged deficiencies by April 27 but did not seek Court intervention before discovery closed. *See id.*

**C. Defendant's Interrogatories**

Separately, on March 31, 2026, Defendant served 19 interrogatories on Plaintiff. *See* ECF No. [60-1]. The interrogatories sought information about, among other subjects, the Vessel's alleged theft and registration history; Plaintiff's acquisition, ownership, and payment for the Vessel; persons involved in the Vessel's custody and maintenance in Antigua; Plaintiff's recovery efforts; his damages; and his investigation of persons involved in the Vessel's transfer. *See id.* at 3–6. Plaintiff's answers were due on April 30, 2026 — the day discovery closed. *See* Fed. R. Civ. P. 33(b)(2). Plaintiff did not answer or object to the interrogatories, and the answers remain

outstanding. *See* ECF No. [60] at 3; ECF No. [63] at 2, 5, 7. Plaintiff acknowledges that the interrogatories should have been answered. *See* ECF No. [63] at 5, 7.

Defendant did not ask the Court to compel answers when they became due, did not seek relief within the 28-day period prescribed by Local Rule 26.1(g)(2) and the Court's Discovery Procedures Order, and did not move to extend the discovery deadline. *See generally* Docket. Discovery closed on April 30, 2026. *See* ECF No. [26] at 2. Defendant first raised the discovery issues with the Court on June 17, 2026, by email to the undersigned's Chambers, requesting a discovery hearing. The Court denied the request for a hearing because discovery had closed but authorized Defendant to file the Motion, which Defendant filed on July 31, 2026. *See* ECF No. [60].

The Motion seeks an order: (1) finding that Plaintiff withheld discoverable information in bad faith and without substantial justification; (2) awarding Defendant the attorney's fees and costs incurred in addressing the alleged misconduct and preparing the Motion; (3) precluding Plaintiff from introducing or relying on any document, witness, fact, opinion, theory, or item of damages not timely disclosed during discovery; (4) imposing adverse inferences or deeming designated facts established; and (5) granting any other appropriate relief. *See* ECF No. [60] at 8–9. Plaintiff opposes the requested sanctions, emphasizing Defendant's delay in seeking Court intervention and the absence of a prior order compelling discovery. *See* ECF No. [63] at 4–7.

## II. LEGAL STANDARDS

### A. Rule 37 Sanctions for Discovery Violations

"Discovery is one of the working tools of the legal profession." *Hickman v. Taylor*, 329 U.S. 495, 515 (1947) (Jackson, J., concurring). That is true because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* at 507 (majority

opinion). Because of discovery's importance in litigation, *see Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1168 (5th Cir. Unit B 1981) ("We have consistently regarded the discovery process as a serious matter and will continue to do so." (citations omitted)), the Federal Rules of Civil Procedure provide several mechanisms a party can use to force compliance with unfulfilled discovery obligations.

Rule 37(d)(1)(A)(ii) addresses a party's complete failure to answer properly served interrogatories. *See* Fed. R. Civ. P. 37(d)(1)(A)(ii). It states that if "a party, after being properly served with interrogatories under Rule 33 . . . fails to serve its answers, objections, or written response," the court may, on motion, order sanctions. Fed. R. Civ. P. 37(d)(1)(A)(ii). Available sanctions include any of the orders listed in Rule 37(b)(2)(A)(i) through (vi), including deeming facts established, prohibiting a party from supporting claims or introducing designated matters in evidence, striking pleadings, staying proceedings, dismissing an action, or rendering default judgment. *See* Fed. R. Civ. P. 37(d)(3). Rule 37(d)(3) also provides that, instead of or in addition to those sanctions, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure," unless the failure was substantially justified or other circumstances would make an award unjust. *Id.*

Rule 37(c)(1), in turn, addresses a party's failure to provide information required by Rule 26(a) or (e). *See* Fed. R. Civ. P. 37(c)(1). Rule 26(e)(1)(A) requires a party who has responded to a request for production to supplement or correct its response "in a timely manner" if the party learns that the response is materially incomplete or incorrect and the additional or corrective information has not otherwise been made known during discovery. Fed. R. Civ. P. 26(e)(1)(A). If the party fails to provide information required by Rule 26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of preclusion, the court may order payment of reasonable expenses such as attorney's fees, inform the jury of the failure, or impose other appropriate sanctions listed in Rule 37(b)(2)(A)(i) through (vi). *See* Fed. R. Civ. P. 37(c)(1)(A)–(C).

The non-disclosing party bears the burden of establishing that its failure to disclose was substantially justified or harmless. *See Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In deciding whether exclusion is warranted, courts consider "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004); *see also Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019) (applying the same considerations). Those considerations apply with equal force when the undisclosed information consists of documents rather than witness testimony. *See Witt v. Franklin Cnty. Bd. of Educ.*, No. CV-11-S-1031-NW, 2013 WL 832152, at *1–2 (N.D. Ala. Feb. 28, 2013) (applying *Bearint* considerations to undisclosed documents). Rule 37(c)(1)'s preclusion provision is designed to prevent a party from benefitting from evidence it withheld and to protect the opposing party from trial by ambush. *See Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2007 WL 9702464, at *1 (S.D. Fla. Nov. 6, 2007).

At the same time, discovery relief must be sought within the deadlines established by the applicable rules and the District Court's orders. *See* Fed. R. Civ. P. 16(b)(3)(A), (b)(4), (c)(2)(F); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011). For disputes concerning a written response or objection, Local Rule 26.1(g)(2)(A)(i) requires submission within 28 days after service; for other discovery disputes, subsection (A)(iv) requires

submission within 28 days after the issue was first raised with opposing counsel. *See* S.D. Fla. L.R. 26.1(g)(2)(A)(i)–(iv). The Parties may extend the applicable period once, by up to seven days, through a written stipulation that does not conflict with a Court order, but conferral does not itself toll the deadline *See* S.D. Fla. L.R. 26.1(g)(2)(C)–(D).

Absent good cause, failure to timely submit a discovery dispute may, in the Court's discretion, warrant denial of the requested relief. *See* S.D. Fla. L.R. 26.1(g)(2)(B); *see also Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2014 WL 1237553, at *2 (S.D. Fla. Mar. 26, 2014) ("The Local Rule reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve amongst themselves. Consequently, there is a presumption that the failure to timely file the discovery motion may constitute a waiver of the relief sought. That presumptive waiver, however, may be overcome upon a showing of reasonable cause for the delay. Nevertheless, the Local Rule is permissive and affords the Court discretion in whether to consider a late-filed motion.") (internal quotation marks and citations omitted).

**B. Court's Inherent Authority**

Federal courts also possess inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). Those powers are indispensable to the judicial function and include the authority to control the proceedings before the court, enforce compliance with lawful orders, protect the integrity of the adjudicative process, and sanction conduct that abuses that process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). The court's inherent authority is both broader and narrower than rule-based sanctioning mechanisms. *See Chambers*, 501 U.S. at 47. It is broader because it may

reach conduct not captured by a particular procedural rule, including misconduct occurring outside the filing of a pleading or motion and conduct comprising a pattern that transcends any single rule violation. *See Chambers*, 501 U.S. at 46–51. It is narrower because, when used to punish a party or impose attorney's fees for litigation misconduct, its exercise generally requires a finding of "bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). As such, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power, LLC*, 851 F.3d at 1223.

Importantly, the relevant standard is "subjective bad faith," not mere negligence or recklessness. *Id.* The subjective bad-faith determination must be tied to specific conduct and supported by sufficiently detailed factual findings. *See id.* at 1224–25. The court should identify the conduct it finds sanctionable, explain why that conduct demonstrates subjective bad faith, and distinguish the sanctioned behavior from legitimate advocacy, factual disagreement, or an unsuccessful but good-faith position. *See id.*; *In re Mroz*, 65 F.3d at 1575–76. A finding may rest on evidence that a party willfully disobeyed a court order, attempted to abuse the judicial process, harassed an opposing party or counsel to obtain litigation advantage, or engaged in conduct calculated to interfere with the court's ability to resolve the case fairly. *See Chambers*, 501 U.S. at 45; *Purchasing Power, LLC*, 851 F.3d at 1223; *In re Mroz*, 65 F.3d at 1575–76.

Intent ordinarily must be inferred from "wrongdoing in the context of the case," including the party's knowledge of the order, the clarity of the instruction, the temporal proximity between the instruction and the misconduct, the repetition of the conduct, the implausibility or inconsistency of the explanations offered, the party's response when the violation was identified, and whether the conduct continued after notice or after a sanctions motion was filed. *See Purchasing Power*, 851 F.3d at 1225; *see also Chambers*, 501 U.S. at 50 (reviewing sanctions "in

the circumstances of this case"). The court may also consider statements by the party revealing the purpose or anticipated effect of the challenged conduct. *See id.*

The existence of an applicable Federal Rule of Civil Procedure does not eliminate the Court's inherent authority. *See Chambers*, 501 U.S. at 50. When misconduct is adequately addressed by a rule, the court ordinarily should consider the rule-based mechanism first; nevertheless, the court may invoke its inherent authority where the rule is not "up to the task," where the misconduct extends beyond the rule's precise reach, or where the totality of the conduct constitutes a broader abuse of the judicial process. *Id.* at 50. The two sources of authority may therefore operate concurrently, provided that the Court applies the distinct prerequisites governing each. *See id.*; *Peer v. Lewis*, 606 F.3d 1306, 1314–15 (11th Cir. 2010).

Because inherent powers are potent and not cabined by a detailed statutory scheme, they must be exercised with "restraint and discretion." *Chambers*, 501 U.S. at 44. The sanction must respond to the identified misconduct, serve a legitimate judicial purpose, and be no more severe than reasonably necessary to address the abuse and protect the proceedings. *See id.* at 44–45 ("Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion.") (internal citations omitted); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

## III. DISCUSSION

The Motion concerns two distinct alleged failures: Plaintiff's complete failure to answer Defendant's interrogatories and Plaintiff's failure to produce documents responsive to Defendant's RFPs. *See* ECF No. [60] at 3–8. Although Defendant presents them together as part of a single

course of misconduct, the issues arose in different procedural postures and warrant different outcomes.

### A. No Sanctions Are Warranted for the Unanswered Interrogatories

The Parties do not dispute that Plaintiff failed to answer or object to Defendant's 19 interrogatories. Rule 37(d)(1)(A)(ii) authorizes the Court to enter sanctions for such failure. However, Defendant did not timely seek relief under the procedures governing this case. *See* ECF No. [27] at 2 ("Parties must timely raise discovery disputes as required by Local Rule 26.1(g)(2). The Court strictly enforces the Local Rule and interprets the 28-day window as the time during which the parties must make good-faith resolution efforts, subject to the seven-day extension permitted by the Local Rule. Thus, the moving party must seek relief within the period prescribed in Local Rule 26.1(g)(2) by contacting Magistrate Judge Elfenbein's chambers, as explained in paragraph three below. The parties should take note that the Court strictly enforces Local Rule 26.1(d), which requires that all discovery, including resolution of discovery disputes, be fully completed prior to the expiration of the discovery cutoff."); *see also Procaps S.A.*, 2014 WL 1237553, at *2.

Defendant delayed serving the interrogatories until March 31, 2026, making Plaintiff's responses due on April 30, 2026 — the same day discovery closed. *See* ECF No. [26] at 2; ECF No. [60-1] at 1, 13; *see also* Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."). In waiting until the eleventh-hour to serve the interrogatories, Defendant made it impossible to seek resolution of the discovery dispute prior to the expiration of the discovery cutoff, as the Court's Discovery Procedures require. *See* ECF No. [27] at 2. Even if the Court gives Defendant the benefit of the doubt and allows Defendant a grace period to seek relief after the discovery deadline, Defendant

was far from diligent in pursuing any relief related to the interrogatories. Indeed, when no responses arrived, Defendant did not attempt to comply with Local Rule 26.1(g)(2), which gives 28 days to confer and seek Court intervention. Within that timeframe, Defendant did not request a discovery hearing, move to extend the discovery deadline, or otherwise alert the Court that Plaintiff's answers were overdue. *See generally* Docket. Instead, Defendant waited until June 17, 2026 — more than six weeks after the responses were due, well after the close of discovery, and approximately 11 weeks after serving the interrogatories — to raise the issue.

Defendant offers no good cause for that delay. *See* ECF No. [60] at 1–9; ECF No. [64] at 1–4. His argument that the deposition transcript was necessary to confirm Plaintiff's document-production failures does not explain the failure to pursue the separately overdue interrogatory answers. *See* ECF No. [64] at 2–3. There is no dispute that Plaintiff's failure to answer Defendant's interrogatories was known to Defendant the moment the April 30 deadline passed. *See* ECF No. [60] at 3–5; ECF No. [63] at 2, 5, 7.

Defendant's own timing created the compressed schedule. See ECF No. [26] at 2; ECF No. [60-1]. He chose to serve interrogatories on March 31, leaving the full 30-day response period to run through the last day of discovery. *See* ECF No. [26] at 2; ECF No. [60-1]; *see also* Fed. R. Civ. P. 33(b)(2). That choice did not relieve Plaintiff of his obligation to respond. But it did require Defendant to act promptly when Plaintiff failed to do so. Defendant instead allowed the dispute to remain dormant beyond both the discovery cutoff and the Local Rule's 28-day deadline, without requesting an extension or showing good cause. *See* S.D. Fla. L.R. 26.1(g)(2)(B); *Procaps S.A.*, 2014 WL 1237553, at *2. Allowing Rule 37(d) relief now would undermine the Court's express requirement that discovery disputes be timely presented and resolved within the discovery period. *See* ECF No. [27] at 2.

Accordingly, the Motion is denied to the extent it seeks sanctions, expenses, compelled answers, evidentiary consequences, or any other relief based on Plaintiff's failure to answer Defendant's interrogatories. This ruling does not condone Plaintiff's noncompliance, which Plaintiff concedes. *See* ECF No. [63] at 2, 5, 7. A party may not simply ignore properly served interrogatories. *See* Fed. R. Civ. P. 37(d)(2). This ruling reflects only that Defendant did not timely invoke the Court's assistance despite clear procedures requiring him to do so. *See* ECF No. [27] at 2.

**B. Plaintiff Cannot Use Documents Withheld During Discovery**

The document-production issue is different. Defendant served his RFPs on February 11, 2026, well before the discovery deadline. *See* ECF No. [60-2]. Plaintiff responded on March 13, supplemented his production on April 3, and, after repeated conferrals, represented on April 22 that he had no additional responsive documents. *See* ECF No. [60] at 2–3; ECF No. [60-4]. Unlike the interrogatories, Defendant repeatedly pursued the requested discovery and received an unequivocal representation that no additional responsive documents existed. *See* ECF No. [60] at 2–3. Five days later — and only three days before discovery closed — Plaintiff's own deposition testimony revealed that additional responsive documents existed or could be located. *See* ECF No. [60-3].

Against that record, Plaintiff's timing argument reverses responsibility.[1] *See* ECF No. [63] at 4–6. Defendant was entitled to rely on Plaintiff's representation that the production was

[1] Although Defendant did not bring this issue to the Court's attention until several weeks after the deposition and close of discovery, Defendant explains that he needed Plaintiff's deposition transcript to provide the testimony in which Plaintiff admitted to withholding various categories of documents from his production. The Court finds that this delay constitutes good cause as Defendant required such information to satisfy his burden to seek sanctions under Rule 37(c)(1) and the Court's inherent authority, the latter of which requires a showing of bad faith. Thus, unlike Defendant's delay in bringing the matter of Plaintiff's overdue interrogatory responses to the Court's attention, Defendant has demonstrated good cause for the delay in seeking relief for this separate discovery violation.

complete. And once Plaintiff contradicted that representation at his April 27 deposition, only three days remained before discovery closed. *See* ECF No. [26] at 2; ECF No. [60-3]. Plaintiff's testimony disclosed not merely an abstract possibility that other evidence might exist, but specific categories of responsive documents: purchase invoices and related documentation, maintenance invoices, records identifying the captain responsible for the Vessel in Antigua, and documents Plaintiff was intentionally reserving for possible use at trial. *See* ECF No. [60-3] at 7:3–9, 7:16–25, 8:8–24, 17:3–9, 17:18–21, 21:23–22:1. Plaintiff does not even represent that he later produced those materials. *See* ECF No. [63] at 1–7.

Rule 26(e) required Plaintiff to supplement his RFP responses in a timely manner once he learned that they were materially incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A). It is undisputed that Plaintiff did not do so. Under Rule 37(c)(1), Plaintiff therefore may not use the undisclosed documents to support a motion, at a hearing, or at trial unless the failure was (1) substantially justified or (2) harmless. *See* Fed. R. Civ. P. 37(c)(1); *Mitchell*, 318 F. App'x at 824; *Bearint*, 389 F.3d at 1353; *Taylor*, 940 F.3d at 593; *Witt*, 2013 WL 832152, at *1–2.

Plaintiff has not carried that burden. As to justification, Plaintiff does not identify any practical obstacle, legal objection, privilege, or inability to obtain materials within his possession, custody, or control. *See* ECF No. [63] at 1–7. He principally argues that Defendant should have sought Court intervention sooner. *See id.* at 4–6. But that does not justify Plaintiff's own failure to provide responsive documents, especially after counsel represented that no further responsive materials existed. *See* ECF No. [60] at 3; ECF No. [63] at 4–6. Nor can Plaintiff reasonably characterize his omission as inadvertent when Plaintiff testified that he retained documents "up [his] sleeve" for trial and believed he need not "show all of [his] cards up front." ECF No. [60-3] at 8:8–24; 17:3–9. Whatever differences may exist between Spanish and federal litigation practice

in the United States, a party litigating in this country's federal court must comply with the Federal Rules of Civil Procedure, the Local Rules, and the District Court's orders. Such rules and orders are in place to prevent a party from benefitting from evidence it withheld and to protect the opposing party from trial by ambush. *See Pendlebury*, 2007 WL 9702464, at *1.

The failure also was not harmless. The withheld materials are likely to concern central issues: Plaintiff's acquisition and ownership of the Vessel, his custody and maintenance in Antigua, the identity of persons with relevant knowledge, the alleged theft or unauthorized transfer, valuation, and damages. *See* ECF No. [1]; ECF No. [60-2]; ECF No. [60-3] at 7:3–9, 7:16–25, 8:8–24, 17:3–9, 17:18–21, 21:23–22:1. Defendant was entitled to review the actual documents, test their authenticity and meaning, investigate the persons and transactions they revealed, and use them in follow-up discovery and trial preparation. *See Little v. City of Anniston*, No. 1:15-CV-954-VEH, 2016 WL 7407093, at *4 (N.D. Ala. Dec. 22, 2016) ("The purpose of requiring the Plaintiff to at least identify these documents as part of his initial disclosures is to avoid surprise and minimize prejudice. The Plaintiff's failure to identify and produce these documents, even if they were in the possession of the Defendants, runs afoul of this purpose. If they had been produced or identified, the Defendants would have had the opportunity for further investigation, preparation, and discovery with regards to the Plaintiff's anticipated use of these documents. The Plaintiff has failed to show how the failure to identify or produce these documents, even if they were in the possession of the Defendants, did not prejudice them.") (internal citations omitted).

Deposition answers containing Plaintiff's general descriptions of the documents are not an adequate substitute for the production of the documents themselves. And because Plaintiff disclosed the existence of the materials only three days before discovery closed — after previously

stating that his production was complete — Defendant lacked a meaningful opportunity to cure the prejudice through ordinary discovery. The importance of the documents likewise favors preclusion. Plaintiff apparently regards at least some of the documents as important enough to reserve for trial. *See* ECF No. [60-3] at 8:8–24; 17:3–9. Permitting Plaintiff to use the documents now would reward noncompliance and create the precise trial-by-ambush problem Rule 37(c)(1) is designed to prevent. *See Witt*, 2013 WL 832152, at *1–2.

Preclusion is also proportionate. The demonstrated violation concerns documents responsive to Defendant's RFPs that Plaintiff failed to produce. *See* ECF No. [60-2]; ECF No. [60-3]; ECF No. [60-4]. The remedy here should track that violation. *See United States v. Valera*, 845 F.2d 923, 928 n.3 (11th Cir. 1988) ("The remedy of a discovery violation lies within the discretion of the trial court."); *Architects Collective v. Pucciano & Eng., Inc.*, No. 1:15-CV-0842-AT, 2016 WL 9454428, at *5 (N.D. Ga. Nov. 14, 2016) ("Although broad, a district court's discretion to fashion appropriate discovery sanctions is not unbounded. A court must impose a sanction that is just and tailored to the severity of the discovery violation at issue.") (internal citations omitted). Plaintiff will therefore be barred from using — on a motion, at a hearing, or at trial — any document responsive to Defendant's February 11, 2026 RFPs that Plaintiff did not produce during discovery.

**C. No Additional Sanctions are Warranted**

The Court declines Defendant's remaining requests for attorney's fees and costs, adverse inferences, deemed facts, and a finding of bad faith under the Court's inherent authority. First, Rule 37(c)(1) permits but does not require an expense award for a failure to supplement. *See* Fed. R. Civ. P. 37(c)(1)(A). Monetary sanctions are unwarranted because the Court has resolved the issues raised by the Parties in favor of both Plaintiff and Defendant and has tailored relief to

address the discovery issues actually supported by the record. Second, Defendant has not identified the specific facts it wants deemed established or the precise adverse inference he seeks. *See* ECF No. [60] at 8; ECF No. [64] at 4. Such open-ended sanctions would risk resolving disputed merits issues untethered to the actual evidentiary gap. Precluding the withheld documents is a direct and sufficient response.

Finally, the Court need not decide whether Plaintiff acted in subjective bad faith. Rule 37(c)(1) squarely addresses the failure to supplement and supplies an adequate remedy without a bad-faith finding. *See Chambers*, 501 U.S. at 50. Although Plaintiff's testimony reflects a serious misunderstanding — or disregard — of federal discovery obligations, *see* ECF No. [60-3], the Court exercises restraint and does not invoke inherent authority where Rule 37(c)(1) is fully "up to the task," *Chambers*, 501 U.S. at 50. The Motion is therefore denied to the extent it asks the Court to make a bad-faith finding or impose inherent-authority sanctions.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendant's Motion, **ECF No. [60]**, is **GRANTED in part and DENIED in part** as follows:

1. The Motion is **GRANTED** to the limited extent that Plaintiff is **PRECLUDED**, under Federal Rule of Civil Procedure 37(c)(1), from using any document responsive to Defendant's February 11, 2026 Requests for Production that Plaintiff did not produce during discovery to supply evidence on a motion, at a hearing, or at trial;
2. The Motion is **DENIED** to the extent it seeks sanctions or any other relief based on Plaintiff's failure to answer Defendant's March 31, 2026 Interrogatories; and
3. The Motion is **DENIED** to the extent it seeks attorney's fees or costs, adverse inferences, an order deeming facts established, blanket preclusion of witnesses, facts, opinions,

theories, or damages, a finding of subjective bad faith, or sanctions under the Court's inherent authority.

**DONE AND ORDERED** in Chambers in Miami, Florida on October 7, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record